UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| CHRISTOPHER HITCHCOCK, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:13-cr-00022-JAW |
| | ) | 1:17-cv-00201-JAW |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Respondent | ) | |

## ORDER AFFIRMING RECOMMENDED DECISION

After performing a de novo review, the Court affirms the Magistrate Judge's
recommendation that an inmate's habeas corpus petition be denied because the fact
that after the imposition of the federal sentence, the state dismissed then pending
state charges would not have changed the Court's sentence and the Court properly
considered the then pending state charges at the sentencing hearing.

## I.    BACKGROUND

### A.    Procedural Background

On February 7, 2013, a federal grand jury indicted Christopher Hitchcock for
knowingly transporting child pornography, a violation of 18 U.S.C. § 2252A(a)(1).[1]
On November 13, 2013, Mr. Hitchcock pleaded guilty to Count One of the indictment

---

[1]    In the same indictment, the grand jury indicted Mr. Hitchcock for Count Two, knowingly
receiving child pornography, a violation of 18 U.S.C. § 2252A(a)(2), and Count Three, knowingly
possessing child pornography, a violation of 18 U.S.C. § 2252A(a)(5)(B). *Indictment* at 1-2 (ECF No.
2).  Mr. Hitchcock pleaded guilty only to knowing transportation of child pornography set forth in
Count One of the Indictment. *Min. Entry* (ECF No. 41).  In accordance with the plea agreement, the
Government agreed to dismiss Counts Two and Three at the end of the sentencing on Count One, and
it did so.  *Agreement to Plead Guilty (With Stips. And Appeal Waiver)* at 2 (ECF No. 37) ("The
Government agrees to move to dismiss Counts Two and Three of the Indictment following the
imposition of sentence on Count One"); *Oral Mot.* (ECF No. 51); *Oral Order* (ECF No. 52).

and admitted the contents of the Revised Prosecution Version of the offense. *Min. Entry* (ECF No. 41); *Revised Prosecution Version* (ECF No. 40). On April 28, 2014, the Court sentenced Mr. Hitchcock to 240 months of incarceration, twenty years of supervised release, and a $100 special assessment. *Min. Entry* (ECF No. 50); *J.* (ECF No. 54). On April 30, 2014, Mr. Hitchcock filed a notice of appeal to the Court of Appeals for the First Circuit, appealing his sentence. *Notice of Appeal* (ECF No. 56). On June 25, 2016, the First Circuit affirmed his sentence. *J.* (ECF No. 62) (*First Circuit J.*).

On February 5, 2016, Mr. Hitchcock, acting pro se, filed a motion to vacate, set aside or correct his sentence purportedly pursuant to Federal Rule of Civil Procedure 60(b). *Mot. for Relief* (ECF No. 68) (*Pet'r's Mot.*). On March 31, 2016, the Government filed a motion to comply with *Castro v. United States*, 540 U.S. 375, 377 (2003), seeking to have the Court warn Mr. Hitchcock that it was going to recharacterize his Rule 60(b) motion as a habeas corpus petition under 28 U.S.C. § 2255, that he would be subject to the restrictions on successive collateral challenges, and that he had the opportunity to withdraw or amend his pleading. *Gov't's Mot. to Comply with Castro v. United States* at 1 (ECF No. 74). Mr. Hitchcock objected to the *Castro* notice. *Pet'r's Obj. to Gov't's Mot. to Comply with Castro v. United States* (ECF No. 75). On August 4, 2016, the Magistrate Judge issued a recommended decision in which he recommended that the Court grant the Government's *Castro* motion. *Recommended Decision on Gov't's Mot. to Comply* (ECF No. 77). On September 2, 2016, the Court

affirmed the recommended decision. *Order Affirming the Recommended Decision of the Magistrate Judge* (ECF No. 78).

Due to a clerical mistake, Mr. Hitchcock's petition became inactive for a time and on March 31, 2017, the Court, prompted by his inquiry, issued an order for the Government to respond to his petition. *Order on Status of Case* (ECF No. 81). On April 21, 2017, the Government filed its response. *Gov't Mot. for Summ. Dismissal of Mot. to Vacate, Set Aside, or Correct Sent. Pursuant to 28 U.S.C. § 2255* (ECF No. 82) (*Gov't's Opp'n*). On May 3, 2017, Mr. Hitchcock filed a reply. *Reply to Gov't's Mot. for Summ. Dismissal of 28 U.S.C. § 2255 Mot.* (ECF No. 83). On June 12, 2017, the Magistrate Judge issued a recommended decision, recommending that the Court deny Mr. Hitchcock's petition. *Recommended Decision on 28 U.S.C. § 2255 Mot.* (ECF No. 85) (*Recommended Decision*). On June 26, 2017, Mr. Hitchcock objected to the recommended decision. *Pet'r's Obj. to Magistrate[']s Report and Recommended Decision* (ECF No. 86) (*Pet'r's Obj.*). On July 10, 2017, the Government filed its response. *Gov't's Resp. to Pet'r's Obj. to Magistrate's Report and Recommended Decision* (ECF No. 87) (*Gov't's Resp. to Obj*).

## B.    Factual Background

### 1.    The Crime

In August of 2010, the FBI was investigating an individual (Individual One) who was trading child pornography via Yahoo! email. *Revised Prosecution Version* at 1 (ECF No. 40). After executing a search warrant at Individual One's residence, he agreed to allow investigators to take over his online presence. *Id.* Investigators

discovered that on August 8, 2010, an individual with the Yahoo! email username "avalee6969" sent via email twenty-six images of child erotica and child pornography to Individual One. *Id.* These images were of the same female child. *Id.* Two such images admitted under seal as Exhibits A and B depict a prepubescent female lying on her back. *Id.* The female has her legs spread and is holding them apart with her hands. *Id.* The focal point of the image is the vagina of the female child. *Id.* The girl in this image was identified as a real child by the National Center for Missing and Exploited Children. *Id.* Photographs of her abuse were taken in the Netherlands when she was between eight and thirteen. *Id.* The defendant possessed and transported images of this girl at the age she appears in Exhibit A and B. *Id.*

The FBI determined that the IP address assigned to the user "avalee6969" at the time and date the images were sent to Individual One resolved to the defendant's parent's house in Fort Fairfield, Maine. *Id.* at 1-2. On May 31, 2011, a search warrant was executed at the defendant's parent's house in Fort Fairfield, Maine. *Id.* at 2. Investigators then went to the defendant's residence but were told he was at work. *Id.* Later in the afternoon on the day the search warrant was executed, the defendant showed up at the Presque Isle Police Department. *Id.* He agreed to speak to investigators. *Id.* He admitted that the "avalee6969" Yahoo! email account belonged to him. *Id.* He also admitted that he had used his father's computer at his parent's residence in Fort Fairfield, Maine to access his Yahoo! email account while he lived there. *Id.* He acknowledged that he had emailed images of child pornography to multiple other users using his Yahoo! email account with the username

"avalee6969." *Id.* Defendant admitted that he transported child pornography images of the female child in Exhibit A & B but stated that he was not the only person with access to the Yahoo! email account. *Id.*

The defendant agreed to allow law enforcement to access the Yahoo! email account with the username "avalee6969" and to assume the identity on the account. *Id.* He signed a consent form agreeing to this and he provided a password to the account. *Id.* A review of the defendant's email account corroborated his statement to law enforcement. *Id.* In the Sent Items folder of the "avalee6969" Yahoo! email account, investigators found 128 emails that contained a total of 704 child erotica and 2586 child pornography images. *Id.* at 2-3. The majority of these sent images were the same as the original twenty-six images that were sent to Individual One. *Id.* at 3.

At the November 13, 2013 Rule 11 hearing, Mr. Hitchcock admitted the truth of the contents of the Prosecution Version as revised, including that he recognized the girl whose images appeared in Exhibits A and B and that the images were child pornography. *Tr. of Proceedings, Rule 11 Proceedings* 15:23-18:3 (ECF No. 61). Mr. Hitchcock expressly admitted that the information contained in the Prosecution Version as revised was true to his personal knowledge. *Id.* 17:14-16.

## 2. The Sentencing Hearing

### a. Guideline Calculations

During the sentencing hearing on April 28, 2014, the Court resolved two sentencing issues. *Tr. of Proceedings, Sentencing Proceedings* 5:21-18:16 (ECF No.

60) (*Sentencing Tr.*). The first sentencing issue had guideline implications; the second did not. The first sentencing issue involved whether in trading child pornography for other pornography, he was distributing child pornography for the receipt or expectation of receipt of a thing of value under United States Sentencing Guideline § 2G2.2(b)(3)(B). *Id.* 5:21-11:3. The Court concluded that § 2G2.2(b)(3)(B) applied and increased Mr. Hitchcock's total offense level by five. *Id.* As a result, Mr. Hitchcock's guideline sentence range was 324 to 405 months of incarceration, based on a total offense level of 37 and a criminal history category of V. *Id.* 27:17-19. However, Mr. Hitchcock was facing a statutory maximum sentence of 240 months and therefore the Guideline range was 240 months of incarceration. *Id.* 27:19-22. Mr. Hitchcock is not challenging the Court's guideline findings in his pending habeas corpus petition or in his objection to the Magistrate Judge's recommended decision. *Pet'r's Mot.* at 1-5; *Pet'r's Obj.* at 1-3.

### b.   Pending State Criminal Charges

The sole focus of Mr. Hitchcock's pending petition for writ of habeas corpus is the Court's treatment of two criminal charges then pending in state of Maine court. *Pet'r's Mot.* at 1-5; *Pet'r's Obj.* at 1-3. The Court stated that "the second issue that counsel have presented to me is whether the court should consider two charges that are now pending against the defendant when assessing the 3553(a) factors." *Sentencing Tr.* 11:4-7. The Presentence Investigation Report revealed that Mr. Hitchcock was facing two state charges: (1) one that allegedly took place on August 16, 2011 and (2) the second that allegedly took place on February 8, 2013. *Presentence*

*Investigation Report* ¶¶ 42-43; *Sentencing Tr.* 11:13-21. The first charge involved attempted gross sexual assault and visual sexual aggression against a child; the second involved visual sexual aggression and violating a condition of release. *Sentencing Tr.* 11:13-21. The Government introduced police reports of both alleged incidents and urged the Court to consider the incidents in making its evaluation of the § 3553(a) factors. *Id.* 11:22-23. The Defendant objected to the Court's consideration of the police reports, asserting that they were unreliable. *Id.* 11:24-12:2.

In assessing the alleged incidents, the Court emphasized (1) that the standard of proof was not beyond a reasonable doubt but a preponderance of the evidence, and (2) that the Court's evaluation was restricted to police reports and that the Court had not had the opportunity to evaluate any in-person testimony from any child or adult witness. *Id.* 13:18-25. The Court carefully reviewed the police reports and concluded that "it is more likely than not that the defendant committed the acts set forth in each of the reports." *Id.* 14:1-3. Before making this finding, the Court undertook a detailed analysis of the contents of the police reports. *Id.* 14:1-17:25.

### c.      Sentencing Analysis

In arriving at its sentence, the Court assessed the factors set forth in § 3553(a), especially focusing on the history and characteristics of the Defendant, the nature and circumstances of the offense, and the need to protect the public from future crimes of the defendant. *Id.* 28:11-19. The Court started with the Guideline sentence range of 324 to 405 months of incarceration, reduced by the statutory maximum of

240 months. *Id.* 28:20-22. Regarding Mr. Hitchcock's history and characteristics, the Court considered (1) his upbringing in Aroostook County, Maine, (2) the absence of any abuse or neglect as a child, (3) his disruptive behavior as a student, leading to five school suspensions before being expelled from Fort Fairfield High School in the ninth grade, (4) Mr. Hitchcock's view that he was the victim of the events leading to his expulsion, (5) his psychiatric diagnoses of ADHD, oppositional defiance disorder, and perhaps narcissistic personality disorder, (6) his later graduation from high school in an adult education program, (7) his relationship with his former girlfriend, (8) the fact he is legally prohibited from contacting his former girlfriend, (9) the fact that his parents have become the primary custodians of his three year old daughter, (10) his physical problems, including foot issues from a work-related accident and restless leg syndrome, (11) his history of alcohol and marijuana abuse, (12) his work history as a construction worker, a farm worker, and a store employee, (13) his termination from employment from Kmart for stealing money from a Kmart customer, (14) his extensive criminal record, including two thefts, five assaults, and six convictions for violating conditions of release, (15) his criminal record includes an offense when he was twenty-one and dating a fifteen year-old girl, when he told her he would not leave until she kissed him and later, pulled her pants down and demanded sex, (16) his three convictions for assaulting his former girlfriend, the last of which involved his pointing a gun at her, (17) his criminal history category of V, a category unusual for a defendant so young, (18) the circumstances underlying the two pending state criminal charges, (19) his use of his father's computer to transport child

pornography, (20) his pretending to be a young girl while on the internet, (21) his incredible and convoluted explanation for his conduct, namely that he was attempting to seek out adult female pornography by pretending to be a female and sending child pornography to older women, (22) the fact that the focus of his sexual misconduct was very young girls, (23) while the investigation of these charges was pending, he engaged in additional misconduct, resulting in the then pending state charges, and (24) his lack of self-control and self-insight. *Id.* 28:11-35:1.

### 3. The Appeal

On June 25, 2015, the First Circuit rejected Mr. Hitchcock's appeal of his sentence. *First Circuit J.* at 1-2. Among the issues Mr. Hitchcock raised was the Court's consideration of the then pending state charges. The First Circuit rejected his objection, noting that "the district court was permitted to base its sentencing decision in part of Hitchcock's pending state charges and criminal history." *Id.* at 1.

## II. THE PARTIES' CONTENTIONS

### A. Christopher Hitchcock's Petition

Mr. Hitchcock's single complaint about his sentence is based on the fact that following his sentencing hearing, the state dismissed the then-pending criminal charges against him. *Pet'r's Mot.* at 1-4. Mr. Hitchcock attached to his petition copies of two dismissals, each dated September 29, 2015. *Id.* Attach. 2 *Dismissal,* CARSC-CR-15-175; *Dismissal*, CARSC-CR-11-345. He contends that these dismissals confirm that "the preponderance of the evidence shows that, as the defendant has perpetually, and adamantly averred, he did NOT commit the alleged acts to which

the state charges were brought forth." *Id.* at 2. Because, in his view, the sentencing court wrongfully convicted him of crimes he did not commit, he demands to be resentenced. *Id.* at 2-3.

## B.  The Government's Opposition

In its opposition, the Government raised three objections: (1) his claim is not justiciable, (2) the Court was within its sentencing authority in considering the pending state charges, and (3) the expanded record refutes Mr. Hitchcock's suggestion that he was acquitted of the state conduct. *Gov't's Opp'n* at 4-5. The Government says that his petition is nonjusticiable because his complaints do not "rise to the level of a miscarriage of justice or exceptional circumstance" the law requires. *Id.* at 5-6. The Government says that his petition fails on the merits because the Court acted within its authority in considering the pending state charges. *Id.* at 6-7. Finally, the Government disagrees that the state dismissals confirm that he was actually innocent of the state charges, noting that the assistant district attorney dismissed each charge because "Defendant is serving a 20 year federal sentence on transportation of child pornography." *Id.* at 7.

## C.  Christopher Hitchcock's Reply

In his reply, Mr. Hitchcock contends that the "Government has the burden of proving that had the state charges been dismissed PRIOR to federal sentencing, the Court would have sentenced him to the same term of imprisonment." *Pet'r's Reply* at 1. Mr. Hitchcock also complains that the Court considered hearsay evidence at his sentencing by reviewing the police reports. *Id.* at 2-4.

## III.    THE RECOMMENDED DECISION

After describing the facts, the Magistrate Judge observed that the First Circuit has written that "it remains the law in this Circuit that acquitted conduct can form the basis of a sentence enhancement." *Recommended Decision* at 3 (quoting *United States v. Fermin*, 771 F.3d 71, 82 (1st Cir. 2014)). The First Circuit rule, the Magistrate Judge noted, is consistent with authority from the United States Supreme Court, which allows a sentencing judge to consider acquitted conduct. *Id.* at 3-4 (citing *United States v. Watts*, 519 U.S. 148, 149 (1997) (per curiam)). Accordingly, the Magistrate Judge recommended that the Court deny Mr. Hitchcock's petition. *Id.* at 4-5.

## IV.    CHRISTOPHER    HITCHCOCK'S    OBJECTION    AND    THE GOVERNMENT'S RESPONSE

In his objection, Mr. Hitchcock attacks the Magistrate Judge's conclusion that "the dismissed charges against him fall within the ambit of 18 U.S.C. § 3661 conduct and *United States v. Watts*." *Pet'r's Obj.* at 1. Mr. Hitchcock contends there is a factual dispute about why the state dismissed the charges: he says the state dismissed the charges because the state could not prove them and the Government says that the state dismissed the charges because he was federally incarcerated. *Id.* He demands an evidentiary hearing to resolve this conflict. *Id.*

Mr. Hitchcock then asserts that even if the Court does not conclude that he qualifies for resentencing, it should vacate his sentence to allow him to restart his appeal. *Id.* at 2. He believes the First Circuit may have ruled differently when it

addressed his direct appeal, if the appellate court had known that the state charges were going to be dismissed. *Id.* at 2.

In response, the Government reiterated its view, based on its prior filings, that Mr. Hitchcock's motion to vacate should be denied. *Gov't's Resp. to Obj.* at 1.

## V.  DISCUSSION

The overriding flaw in Mr. Hitchcock's petition is that even if the Court had not considered the facts underlying the pending state charges, it would have imposed the same sentence of 240 months of incarceration. As the Court noted, the sentencing decision in Mr. Hitchcock's case was not driven by one factor alone; the Court summarized twenty-four separate factors, among others, that led it to impose an admittedly harsh sentence on Mr. Hitchcock. In other words, the Court deemed the facts underlying the state charges to be cumulative of and consistent with a worrisome life history and a troubling crime involving young, vulnerable victims, thus justifying the 240 months of incarceration.

Nevertheless, turning to his main contention that the Court erred in considering the pending state charges, this point is simply wrong as a matter of law. The First Circuit has already written in his case that this Court was "permitted to base its sentencing decision in part of Hitchcock's pending state charges and criminal history." *First Circuit J.* at 1. With few exceptions not present here, like newly discovered evidence[2] or a new retroactive rule of law, Mr. Hitchcock may not

---

[2]     It is true that the state of Maine dismissed the state charges after the First Circuit opinion in this case. Nevertheless, this fact is not "newly discovered" evidence within the meaning of the term. The "newly discovered evidence" exception applies to claims of actual innocence of the offense of conviction under Rule 33, or it can serve as the grounds for a second or successive motion under §

challenge through a habeas corpus petition what the First Circuit decided in his direct appeal. *United States v. Moran*, 107 F.3d 1 (1st Cir. 1997) (in a habeas proceeding "[the federal Defendant] may not relitigate issues already raised and rejected in his direct appeal"); *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) ("In the case of a collateral challenge . . . the so-called mandate rule bars re-litigation of issues already decided on direct appeal").

The First Circuit's ruling on this point is entirely consistent with its precedent. *See e.g. United States v. Aponte-Vellon*, 754 F.3d 89, 93-95 (1st Cir. 2014) (upholding district court's consideration of "pending and dismissed charges" as part of defendant's history); *United States v. Flores-Machicote*, 706 F.3d 16, 21 (1st Cir. 2013) (same; collecting cases). To put this issue in perspective, in the First Circuit, it is permissible for a sentencing judge to consider acquitted conduct at a sentencing hearing. *Fermin*, 771 F.3d at 82. As the Magistrate Judge pointed out, the United States Supreme Court has adopted the same rule. *See Watts*, 519 U.S. at 156. In other words, if Mr. Hitchcock had gone to trial on the state charges and if he had actually been acquitted of those charges before his federal sentencing hearing, this Court could still have considered the charges in imposing its federal sentence. But he was not acquitted. After the federal sentencing, the assistant district attorney simply moved to dismiss the charges "without prejudice" because Mr. Hitchcock had

---

2255(h). Neither situation applies here, because there is no suggestion that any new evidence shows Mr. Hitchcock is actually innocent of transporting child pornography. In any case, even if the dismissal of Mr. Hitchcock's previously pending charges qualified as "newly discovered" evidence, the Court has already explained that it would have imposed the same sentence if it had known of the dismissal at the time of the original sentencing.

been federally sentenced to twenty years of incarceration. In short, if this Court could have properly considered acquitted charges, it could have properly considered dismissed charges.

Mr. Hitchcock argues that the Court erred in considering hearsay evidence at his sentencing hearing. Again, he is simply wrong. The Federal Rules of Evidence do not apply at a sentencing hearing. FED. R. EVID. 1101(d)(3). Nor does the Confrontation Clause. *Williams v. New York*, 337 U.S. 241, 245, 252 (1949); *United States v. Luciano*, 414 F.3d 174, 179 (1st Cir. 2005). Indeed, Congress has provided that "[n]o limitation shall be placed on the information" a sentencing court may consider "concerning the background, character, and conduct of the defendant, unless otherwise prohibited by law." *See* 18 U.S.C. § 3661; U.S.S.G. § 1B1.4.

In summary, the later dismissal of the then pending state charges affords no basis for the Court to resentence Mr. Hitchcock. The Court also concurs with the Magistrate Judge that in light of the law, there is no ground to hold an evidentiary hearing to develop the facts under Rule 8 of the Rules Governing Section 2255 Cases.

## VI.    CONCLUSION

Having performed its de novo review of the Magistrate Judge's recommended decision, the Court AFFIRMS the recommended decision for the reasons set forth in the recommended decision and set forth in this Order. The Court DENIES Christopher Hitchcock's Motion for Relief (ECF No. 68). The Court also DENIES a certificate of appealability, should one be sought, pursuant to Rule 11 of the Rules

Governing Section 2255 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2255(c)(2).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 5th day of January, 2018